IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TAMMY P. YOU, | ) | CIVIL NO. 11-00530 SOM/RLP |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING DEFENDANTS' |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| vs. | ) | |
| | ) | |
| LONGS DRUGS STORES | ) | |
| CALIFORNIA, LLC, d/b/a LONGS | ) | |
| DRUGS; THOMAS McKEOWN; JOHN | ) | |
| DOES 1 through 10; DOE | ) | |
| CORPORATIONS 1 through 10; | ) | |
| AND DOE UNINCORPORATED | ) | |
| ASSOCIATIONS, INCLUDING | ) | |
| PARTNERSHIPS 1 through 10, | ) | |
| | ) | |
| Defendants. | ) | |

_____

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.        INTRODUCTION.

This removed case involves Plaintiff Tammy You's claims of employment discrimination and retaliation against her former employer, Defendant Longs Drugs Stores California, LLC, and her former supervisor, Thomas McKeown.  See Verified Complaint, ECF No. 6-3.  You asserts that Defendants (1) discriminated against her on the basis of race, sex, age, disability, and national origin, in violation of federal and state law, and (2) retaliated against her in violation of the Hawaii Whistleblower Protection Act, section 378-62 of Hawaii Revised Statutes.  She also asserts that McKeown intentionally inflicted emotional distress on her.  She seeks special, general, and punitive damages, plus costs and attorney's fees.  See id.

Defendants now move for summary judgment on the ground that each of You's claims lacks merit.  <u>See</u> ECF Nos. 26.  The court grants the motion.

## II.      BACKGROUND.

You describes her race as "Hawaiian, Japanese, Korean, white, and possibly Spanish."  Deposition of Tammy You at 20, ECF No. 27-2, PageID # 250.  Her national origin is American.  <u>Id.</u> at 299, ECF No. 27-3, PageID # 403.  She believes that others perceive her as "mixed race, local".  <u>Id.</u> at 26, ECF No. 27-2, PageID # 251.  You testified that she has no disability.  <u>Id.</u> at 54, ECF No. 27-2, PageID # 267.

On June 27, 2010, Roy Matsuura, the manager of the Longs store in Kaneohe, Hawaii, hired You and Lauren Kanda as pharmacy service associates at that Longs location.  <u>See</u> You Depo. at 32, ECF No. 27-2, PageID #253; Declaration of Roy Matsuura ¶ 2 ("I made the decision to hire Tammy You as a pharmacy service associate in June 2010."), ECF No. 27-34, PageID # 804.  You, who was born in 1967, is older than Kanda, who is in her 20s and of Japanese descent.  Declaration of Tammy P. You ¶ 17, ECF No. 31-1, PageID #822; You Depo. at 5, ECF No. 27-2, PageID # 249.

You and Kanda began working the overnight shift on August 1, 2010, when the store was scheduled to offer twenty-four-hour service.  You Depo. at 31, ECF No. 27-2, PageID # 252.

2

You and Kanda were in a "special training program" designed to prepare them for the overnight shift by August 1, 2010.  Id.

McKeown is the head pharmacist at the Longs store in Kaneohe.  Declaration of Thomas McKeown ¶ 1, ECF No. 27-31, PageID # 797.  Thirty-six years old when You was hired, McKeown is of Caucasian and Japanese descent, and considers himself "local American" and "mixed local."  McKeown Decl. ¶¶ 2, 4.

You says Defendants treated Kanda more favorably than her.  Specifically, You says that Kanda received more overtime work, was not reprimanded when she was late, and was allowed to make up time when she was late.  You, on the other hand, was reprimanded and not allowed to make up time when she was late.  You Decl. ¶¶ 11, 13, ECF No. 31-1, PageID # 819.  You also says that someone at Longs manipulated attendance records.  See You Decl. ¶ 11, ECF No. 31-1, PageID # 819 ("There are numerous instances where I signed in and then the employer changed the time records to make it look like I was late or took too much time for lunch or whatever they wanted to prove in changing my records.").

Although You says that she does not have a disability, she claims that Defendants treated her as if she had a learning disability.  You Depo. at 302, ECF No. 27-3, PageID # 406.

You alleges that, on or around July 2010, McKeown asked her how many times she had dispensed a particular drug.  You

3

Depo. 32-33, 36-41, ECF No. 27-2, PageID #s 253-60. You says she did not understand why McKeown sought such information, and told him, "You're stressing me out." Id. at 36, ECF No. 27-2, PageID # 255. McKeown recalls having asked You about dispensing the generic form of Flonase. McKeown says that he wanted to make sure that You "was familiar with the names of common drugs dispensed from the pharmacy." You Decl. ¶¶ 10-11, 13, ECF No. 27-31, PageID #s 798-99.

According to You, in response to her statement that McKeown was stressing her out, McKeown asked her to go upstairs so they could speak, then said, "You're not qualified for pharmacy. Who do you think you are? Other people have been waiting for their chance to be in pharmacy. Why do you think you're qualified?" Pl. Dep. 44, ECF No. 36-1, PageID # 878. You says McKeown also told her, "You need to self-identify and check." Id. at 45. You interpreted this statement to mean, "You check your national origin. Who are people going to believe? The Hawaiian or the Japanese?" Id. at 45-46. McKeown did not expressly refer to national origin; You concedes that he only said, "Look into yourself and see. You're not qualified." Id. at 45. He also allegedly said, "You need to go home, decide what you're going to do. Don't come back to pharmacy." Id. at 51, ECF No. 27-2, PageID # 266.

During this exchange, You expressed her concern
regarding getting enough training before the August 1 deadline.
Id.  She alleges that McKeown replied, "Don't worry about it.  I
decide."  Id.

On September 5, 2010, You contacted the Longs ethics
line to report that she was being harassed on the basis of race,
age, and intelligence, and that she had been denied training that
other employees received.  She complained that McKeown only
showed her things once and chastised her for not writing things
down.  She also complained that McKeown reprimanded her for using
the word "yea" instead of "yes" in front of a customer and pushed
her with a basket to make her move faster.  See ECF No. 27-22,
PageID # 781.  In connection with the basket incident, You
explained that, during her "production" training, she had seen a
basket of prescription drug bottles.  She initially characterized
McKeown as having "shoved" her with that basket, but later said
that, when she refrained from touching the basket because she did
not know what her trainer expected her to do with it, McKeown
pushed it toward her without a word, causing the basket to touch
her below her breast.  See You Depo. at 144, ECF No. 27-2.

You complains that McKeown viewed her as having a slow
learning curve and was therefore unwilling to provide training to
her.  Id. at 197-98.  Although You's charge of discrimination
stated under penalty of perjury that McKeown made derogatory

5

comments about her "learning curve," see ECF No. 27-27, You conceded in her deposition that McKeown never expressly commented that her learning curve was holding her back.  You Depo. at 206. Instead, McKeown told her that she should write things down and that she was not 100% yet.  Id. at 205 and 303.  You appears to have interpreted the "write things down" comment as meaning "Your learning curve is holding you back.  You can't be trained."  Id. at 206.

Asked what training she had not received, You's reply was only that she had not felt fully trained.  See You Depo. at 236, ECF No. 42-3, PageID # 952.  It appears that You had received about 20 types of training and may have failed to complete only the on-job training, although she did receive two days of on-job training.  Id. at 233-36.  You testified that her records incorrectly reflected that she had, in fact, completed the on-job training.  See id. at 127.  You does not specifically identify any training that another employee received that she did not.

According to You, Kanda was trained first, then McKeown wanted Kanda to train You.  See id. at 248.  You observed Kanda progressing faster.  For example, although You eventually did "production," Kanda did it first.  See id. at 244.  You suggests that Kanda was allowed to progress faster because she was younger and "Japanese-looking," not based on competency.  See id. at 241.

6

In her Verified Complaint, You says that, on October 10, 2010, she reported to the Longs ethics line that she was being retaliated against because of her earlier contact with the ethics line.  Verified Complaint ¶ 22.  The retaliation You was referring to came in the form of "Coaching and Counseling Forms" stating that You had placed a prescription on the wrong shelf and had sent a prescription to the out-of-stock queue even though the item prescribed was in-stock.  See ECF Nos. 27-23 and 27-24, PageID #s 783-786.  These forms were signed by You and her supervisor, pharmacist Rona Nuesca.  Id.  You claims that Nuesca counseled her at McKeown's direction on false grounds.  See You Depo. at 98, 254, ECF Nos. 27-2 and 27-3.  You does not contest the accuracy of the write-ups and was not demoted as a result of the alleged errors.  Id. at 255-57.

According to the Verified Complaint, You spoke with the Longs employee relations office on October 26, 2010, and was told that her ethics complaint was closed with no finding of misconduct.  See Verified Complaint ¶ 25, ECF No. 6-3.

On December 3, 2010, You filed a Charge of Discrimination ("Charge") with the Hawaii Civil Rights Commission ("HCRC") and the United Stated Equal Employment Opportunity Commission ("EEOC"), alleging that Defendants had discriminated against her on the basis of sex, national origin, retaliation, age, and disability.  See ECF No. 27-27.  The charge alleges that

the discrimination began on June 28, 2010, and last occurred on

November 23, 2010.  Id.  The Charge states:

> On June 28, 2010, I was hired by the above-
> named employer.  My current job title is
> Pharmacy Service Associate.
>
> Since my hire, Lead Pharmacist Thomas Mckeown
> [sic] (Asian/White male, age 30's) has
> subjected me to disparate treatment and
> harassment.  Mckeown failed to provide me
> with adequate training and job assignments.
> He has also made derogatory comments to me
> and in front of co-workers about my "learning
> curve" to perform my job duties.  On one
> occasion, McKeown intentionally hit me with a
> black basket used for patient's prescriptions
> and has repeatedly threatened to discharge
> me.  On the other hand, McKeown has provided
> a similarly situated employee Lauren Kanda
> (younger Asian-Japanese female, 20's)
> adequate training and job assignments.
>
> In September 2010, I complained to Respondent
> about McKeown's discriminatory behavior and
> my training.  During the investigation of my
> complaint, Mckeown [sic] directed a female
> Night Pharmacist (Rona Nuenes [sic]) to issue
> me an unwarranted written warning.
> Subsequently, I complained to Respondent
> about retaliation.  I do not believe
> Respondent took appropriate, corrective
> action with respect to my complaints because
> they were both dismissed.

ECF No. 27-27, PageID # 791.

Longs has a policy regarding the sale of

pseudoephedrine ("PSE"), a component used in the illegal

manufacture of methamphetamine.  Longs uses a "MethCheck"

procedure to enforce limits on sales of PSE products.  MethCheck

requires every pharmacy service associate to scan the PSE product

and enter the customer's identification information into the
system.  The MethCheck system then looks up the customer's
records and tells the employee whether the customer has exceeded
the limit.  See You Depo. at 166-67, ECF No. 27-2, PageID # 166-
67.  You acknowledged that she received training from Longs on
the PSE limits, as well as the company's policy and procedure
governing PSE sales.  See id. at 163, 176.  You knew that
"Failure to comply with CVS company policy and the law regarding
sales of restricted products [would] have numerous potential
outcomes, including disciplinary action, including termination of
employment . . . ."  Id. at 183-84.

     You admits that, on May 22, 2011, she sold Loratadine-
D, a generic form of Claritin-D and a regulated PSE product,
without obtaining customer identification and in violation of
company policy.  See You Depo. at 261-66, 273, ECF No. 27-3.  She
tried to scan the product, but because it would not scan
properly, she manually looked up the price of the item, then
entered the item into the register as a "taxable item" with the
corresponding price.  Id. at 265.  Because You entered the item
as a "taxable item," it did not trigger the MethCheck procedure.
Id. at 269.  She admitted that this act violated company policy,
as well as federal guidelines. Id. at 271-72.  You said that she
did not know whether the customer had exceeded his limit for PSEs
when she sold him the Loratadine-D.  Id. at 270.

On May 25, 2011, the EEOC issued You a "right to sue" notice, with a determination that it was unable to conclude that Defendants had violated anti-discrimination laws.  See Complaint, Ex. 2.  On June 28, 2011, the Hawai`i Civil Rights Commission also issued You a "Notice of Dismissal and Right to Sue" letter. See Complaint, Ex. 3.

On May 27, 2011, two days after the EEOC had issued its right-to-sue letter and about one month before the HCRC had issued its right-to-sue letter, the Kaneohe Long's store manager, Roy Matsuura, terminated You based on her violation on May 22, 2011, of the PSE policy.  See Matsuura Decl. ¶ 4;[1] You Depo. at 282, ECF No. 27-3.  According to Matsuura, You's "selling [of] the PSE without obtaining proper identification" was the sole reason You was terminated.  Matsuura Decl. ¶ 5.  There is no dispute that You's termination was not raised in her December 3, 2010, Charge to the EEOC or the HCRC.

## III.        STANDARD.

Summary judgment shall be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a) (2010).  See Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The movants must support their

---

[1]Matsuura was the person who had initially hired You as a pharmacy service associate.  Id. ¶ 2.

position that a material fact is or is not genuinely disputed by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c). One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  A moving party without the ultimate burden of persuasion at trial--usually, but not always, the defendant--has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment. Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc., 210 F.3d 1099, 1102 (9th Cir. 2000).

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors

Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec. Serv., Inc., 809 F.2d at 630.  At least some "'significant probative evidence tending to support the complaint'" must be produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the

light most favorable to the nonmoving party.  T.W. Elec. Serv.,

Inc., 809 F.2d at 631.  Inferences may be drawn from underlying

facts not in dispute, as well as from disputed facts that the

judge is required to resolve in favor of the nonmoving party.

Id.  When "direct evidence" produced by the moving party

conflicts with "direct evidence" produced by the party opposing

summary judgment, "the judge must assume the truth of the

evidence set forth by the nonmoving party with respect to that

fact."  Id.

## IV.        ANALYSIS.

You's Verified Complaint asserts claims against Longs

for violations of Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3

(Counts I and IV); the Americans with Disabilities Act, 42 U.S.C.

§§ 12112 and 12132 (Count II); the Age Discrimination in

Employment Act, 29 U.S.C. § 623 (Count III); and section 378-2 of

Hawaii Revised Statutes (Count V).  The Verified Complaint

asserts that Longs and McKeown violated the Hawaii Whistleblower

Protection Act, section 378-62 of Hawaii Revised Statutes

(Count VI), but You has withdrawn that claim with respect to

McKeown and is proceeding in Count VI only against Longs.  You

also asserts an intentional infliction of emotional distress

claim against McKeown (Count VII).

13

**A.    Disparate Treatment Claims.**

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on "race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  The Americans with Disabilities Act similarly prohibits discrimination against qualified individuals with disabilities.  42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.").  The ADA also protects persons who are regarded as disabled.  <u>See</u> 42 U.S.C. § 12101(1)(C); 29 C.F.R. § 1630.2(l).  The Age Discrimination in Employment Act, 29 U.S.C. § 623, prohibits discrimination based on age.  Hawaii law similarly prohibits discrimination based on "race, sex, including gender identity or expression, sexual orientation, age, religion, color, ancestry, disability, marital status, arrest and court record, or domestic or sexual violence victim status."  Haw. Rev. Stat. § 378-2.

A plaintiff asserting disparate treatment may prove that claim in two ways.  First, the plaintiff may apply the burden-shifting analysis set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).  <u>See</u> <u>Raytheon Co. v. Hernandez</u>, 540 U.S. 44, 51-55 (2003) (applying <u>McDonnell Douglas</u> burden shifting

14

framework to disparate treatment claim asserted under § 12112(a) of the ADA); <u>Shelley v. Green</u>, 666 F.3d 599, 607-08 (9th Cir. 2012) (noting that the <u>McDonnell Douglas</u> burden shifting framework applies when evaluating ADEA claims on a summary judgment motion); <u>Surrell v. Cal. Water Serv. Co.</u>, 518 F.3d 1097, 1103 (9th Cir. 2008) (applying <u>McDonnell Douglas</u> burden shifting framework to Title VII case); <u>Shoppe v. Gucci Am., Inc.</u>, 94 Haw. 368, 378, 14 P.3d 1049, 1059 (D. Haw. 2000) (applying federal standard to claims under section 378-2).

Under the <u>McDonnell Douglas</u> framework, a plaintiff must establish a prima facie case of discrimination by showing that (1) she belongs to a protected class; (2) she performed according to his employer's expectations; (3) she suffered an adverse employment action;[2] and (4) similarly situated individuals outside of her protected class were treated more favorably. <u>See</u> <u>Nicholson v. Hyannis Air Serv., Inc.</u>, 580 F.3d 1116 (9th Cir. 2009); <u>Chuang v. Univ. of Cal. Davis, Bd. of Trustees</u>, 225 F.3d 1115 (9th Cir. 2000). The degree of proof required to establish

---

[2]You identifies the alleged adverse employment actions she suffered in paragraph 16 of her declaration. <u>See</u> ECF No. 31-1. Of the 11 so-called adverse employment actions, You clarified at the hearing that she is no longer claiming paragraphs 16(j) and (k) as adverse employment actions. <u>See</u> You Decl. ¶¶ 16(j) ("Probably the reason that I was late for work so many times is that I was afraid to go there because of the hostile work environment caused by Defendant McKeown and others.") and (k) ("When Lauren Kanda was late, she was able to make up her time so that she was not underpaid but I was not.").

a prima facie case for summary judgment is minimal.  See Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094 (9th Cir. 2005).  Under the McDonnell Douglas framework, once a plaintiff succeeds in presenting a prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its employment decision.  Noyes v. Kelly Servs., 488 F.3d 1163, 1168 (9th Cir. 2007).  "Should the defendant carry its burden, the burden then shifts back to the plaintiff to raise a triable issue of fact that the defendant's proffered reason was a pretext for unlawful discrimination."  Id.

Second, a plaintiff may prove disparate treatment by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the employer.  See Surrell, 518 F.3d at 1105.  When a comment is not a "stray remark," even if the employer has a legitimate, nondiscriminatory reason for taking an adverse employment action, the plaintiff "will necessarily have raised a genuine issue of material fact with respect to the legitimacy of bona fides of the employer's articulated reason for its employment decision." Cordova v. State Farm Insurance Companies, 124 F.3d 1145, 1149 (9th Cir. 1997) (quotation marks and citation omitted).

>           **1.   You Failed to Exhaust Her Disparate Treatment
>                  Claims Based on Her Termination, Being Blamed
>                  for Someone Else's Errors, the Changing of
>                  Her Time Records, and Failure to be Paid
>                  Overtime.**

In preparing for the hearing on the motion for summary judgment, this court became concerned that You had not administratively exhausted certain claims.  The court therefore asked You in its normal prehearing inclinations procedure to come to the hearing on the motion for summary judgment prepared to discuss how she had administratively exhausted her claims.  See ECF No. 35.

At the hearing, You stated that she had not administratively exhausted the purported adverse employment actions set forth in paragraphs 16(a) to (e) of her declaration:

>           (a) I was fired which is the worst punishment
>           of all.
>
>           (b) I was blamed for the meth check error
>           when Pharmacist Nuesca assisted me and she
>           was not fired.
>
>           (c) Defendant McKeown had Ms. Nuesca blame me
>           for her own error earlier.
>
>           (d) The employer changed my time records, and
>           not Lauren Kanda.
>
>           (e) I was not paid overtime but Lauren Kanda
>           was.

ECF No. 31-1.  You claimed to have been excused from the exhaustion requirements because filing a charge based on them would have been futile.

Title VII, the ADEA, the ADA, and section 378-2 of the Hawaii Revised Statutes all require a plaintiff to have exhausted administrative remedies before filing a civil action against an employer who has allegedly discriminated against the employer.

"Title VII contains several distinct filing requirements which a claimant must comply with in bringing a civil action." Valenzuela v. Kraft, Inc., 801 F.2d 1170, 1172 as amended by, 815 F.2d 570 (9th Cir. 1987).  To file a claim under Title VII, a plaintiff must file a complaint with the EEOC within 180 days of the last discriminatory act. See Bouman v. Block, 940 F.2d 1211, 1219 (9th Cir. 1991) (citing 42 U.S.C. § 2000e-5(e)).  Moreover, a Title VII action must "be filed within ninety days from the issuance of the right to sue letter by the EEOC." Valenzuela, 801 F.2d at 1172 (citing 42 U.S.C. § 2000e-5(f)(1)).

Like Title VII, the ADEA requires exhaustion of claims by nonfederal employees. See 29 U.S.C. § 626(d)(1); Limongelli v. Postmaster General of United States, 707 F.2d 368, 372 (9th Cir. 1983) (per curiam) ("This incident was not encompassed in his earlier EEOC charge.  He did not exhaust his administrative remedies under ADEA and therefore cannot look to the courts for relief."); but see 29 U.S.C. § 633a (Nondiscrimination on account of age in Federal Government employment).

The ADA also contains an exhaustion requirement.  42 U.S.C. 12117(a) ("The powers, remedies, and procedures set forth

18

in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment."); Henderson v. Alexander & Baldwin, Inc., 2007 WL 4145233, *3 (D. Haw. November 20, 2007) (requiring exhaustion of administrative remedies for ADA claims).

Chapter 368 governs the procedure by which administrative complaints of discrimination under Part I of chapter 378 are filed.  See Haw. Rev. Stat. §§ 378-4; 368-11.  In particular, section 368-11 requires complaints alleging unlawful discrimination in violation of part I of chapter 378, sections 378-1 to 378-10 of Hawaii Revised Statutes, to be filed with the HCRC within 180 days of either the occurrence of the alleged discrimination or the last occurrence in a pattern of ongoing discriminatory practice.  See Sam Teague, Ltd. v. Hawai`i Civil Rights Comm'n, 89 Haw. 269, 276, 971 P.2d 1104, 1111 (1999).[3]

---

[3]Section 378-3(10) excepts sexual harassment claims from the rubric of chapter 368.  See Furukawa v. Honolulu Zoological Soc'y, 936 P.2d 643, 655 (Haw. 1997).  The legislature created the exception for sexual harassment claims in recognition of the fact "'that victims of sexual harassment [are] often so traumatized by the occurrence' that they might fail to file with the [Hawaii Civil Rights] commission within 180 days."  Id. Here, there is no evidence that You's termination related to sexual harassment.  The record reflects only that Matsuura

You's charge of discrimination of November 29, 2010, did not complain about her termination, Nuesca's errors, any changing of You's time records, or any failure to pay overtime. See ECF No. 1-2.  Clearly, the charge of discrimination could not have complained about You's termination or Nuesca's MethCheck errors, as those events did not happen until months later, in May 2011.  You failed to exhaust her administrative remedies with respect to her termination, Nuesca's errors, the changing of You's time records, and any failure to pay overtime, to the extent You seeks relief in connection with those events in Counts I and IV (Title VII, 42 U.S.C. §§ 2000e-2 and 2000e-3), Count II (ADA, 42 U.S.C. §§ 12112 and 12132), Count III (ADEA, 29 U.S.C. § 623), and Count V (section 378-2 of Hawaii Revised Statutes).

You presents the court with no law applicable to the present case that excuses exhaustion on the basis of futility.

You's citation to Leorna v. United States Department of State, 105 F.3d 548 (9th Cir. 1997), is unavailing because that case did not involve any statutory exhaustion requirement.  The employee in that case was a federal employee suing the Department of State under the Rehabilitation Act, not under any of the statutes in issue in the present case, all of which have statutory exhaustion requirements.  The exhaustion in issue in

---

terminated You for selling PSE in violation of Long's policy when she failed to use the MethCheck system.

that case involved following the procedures of the agency the employee was suing, not of the EEOC.  Id. at 550.  The Ninth Circuit noted, "Where, as in the present case, exhaustion of administrative remedies is not specifically required by statute, application of the exhaustion doctrine is within the sound discretion of the court. . . . We will not disturb the district court's determination of whether exhaustion is required unless there has been a clear abuse of discretion."  Id.

Similarly distinguishable from the present case is Harris v. Attorney General of the United States, 657 F. Supp. 2d 1 (D.D.C. 2009), on which You also relies.  That was a case brought by an independent contractor under Title VII.  The threshold issue was whether the independent contractor was an "employee" covered by Title VII.  Once the district court determined that the independent contractor was an employee, it turned to the independent contractor's failure to exhaust the EEOC's administrative remedies.  There was no dispute that the EEOC would have refused to examine the independent contractor's claim based on the EEOC's contrary determination that the independent contractor was not an employee.  On that record, the district court excused the independent contractor's failure to exhaust.  The court's reference to futility in that case concerned the EEOC's undeniable identification of what the EEOC considered to be a jurisdictional bar to administrative

consideration of the claim.  The court was not referring to any assumption or speculation that the EEOC would have done a less-than-thorough investigation or would have failed to find discrimination when discrimination actually existed.  The court was looking at the claimant's proven inability to even get through the EEOC's front door.  This is a far cry from You's speculation about the quality of what the EEOC would have done if presented with new claims.  What You advocates is not an approach addressed by <u>Harris</u>.

None of the cases You reads as excusing exhaustion on futility grounds addresses the kind of speculative merits-based argument You makes.  You's argument that it would have been futile for her to return to the EEOC or HCRC with new claims, including her wrongful termination claim, because the result would inevitably have been a "no cause" finding is not supported by anything in the record.  You is acting as if a mere assertion of futility excuses exhaustion.

The difference between the futility that You asserts and the futility found by the courts in the decisions that You cites is highlighted by her reference to <u>Albano v. Schering-Plough Corp.</u>, 912 F.2d 384 (9th Cir. 1990).  The employee in that case, asserting age discrimination, filed a "failure to promote" charge with the EEOC.  The employee then sought to add a "constructive discharge" claim to that charge.

22

The EEOC refused to allow the amendment and assured the employee that the existing charge encompassed the "constructive discharge" claim, even though, as the Ninth Circuit noted, "We have previously held that a constructive discharge claim is not like or reasonably related to a charge of discrimination in promotion." Id. at 385 (citing Ong. V. Cleland, 642 F.2d 316, 320 (9th Cir. 1981)).  Concluding that the EEOC had not properly processed the timely filed charge and citing equitable considerations, the Ninth Circuit allowed the unexhausted "constructive discharge" claim to proceed in court on the ground that the EEOC's failure to follow its own rules had prevented exhaustion.  Although the Ninth Circuit likened an improper refusal by the EEOC to amend a charge to an inadequate investigation by the EEOC, both involving violations of the EEOC's obligations, the Ninth Circuit was clearly relying on the factual record before it, not on mere supposition that the EEOC would refuse to satisfy its obligations.  By contrast, You presents nothing even approaching the record that the court had in Albano.

This court does not reach the legal question of what circumstances might excuse an employee in You's position from complying with statutory exhaustion requirements based on futility.  If the court were to reach that legal question, it would surely be troubled by the inapplicability of the cases that

23

You relies on.  This kind of concern would echo concerns other courts have noted in similar situations.  See, e.g., Woodward v. Salazar, 731 F. Supp. 2d 1178, 1192-93 (D.N.M. 2010) (noting a plaintiff's failure to cite authority that Title VII allows futility to excuse exhaustion); Murphy v. West, 945 F. Supp. 874, 876 (D. Md. 1996), aff'd on other grounds, 172 F.3d 863 (4th Cir. 1999) ("Plaintiffs have cited no case authority for their extraordinary proposition, and my own research has not located any substantial support for the creation of a 'futility' exception to the Title VII exhaustion requirement, and certainly no support for the assertion that the administrative process may be disregarded in its entirety.").  But You's problem is far more fundamental.  You makes no showing that anything was futile!  In the absence of some such showing, the law of futility is irrelevant.

Nor may this court read those claims that You did exhaust as encompassing the unexhausted claims.  In B.K.B. v. Maui Police Department, 276 F.3d 1091, 1100 (9th Cir. 2002), the Ninth Circuit noted that "[a]llegations of discrimination not included in the plaintiff's administrative charge may not be considered by a federal court unless the new claims are like or reasonably related to the allegations contained in the EEOC charge." (Quotation marks and citations omitted.)  The Ninth Circuit explained:

In determining whether a plaintiff has
exhausted allegations that she did not
specify in her administrative charge, it is
appropriate to consider such factors as the
alleged basis of the discrimination, dates of
discriminatory acts specified within the
charge, perpetrators of discrimination named
in the charge, and any locations at which
discrimination is alleged to have occurred.
In addition, the court should consider
plaintiff's civil claims to be reasonably
related to allegations in the charge to the
extent that those claims are consistent with
the plaintiff's original theory of the case.

Id.

You's administrative charge complained that McKeown

subjected her "to disparate treatment and harassment."  ECF No.

27-27, PageID # 791.  You said that McKeown:

failed to provide me with adequate training
and job assignments.  He has also made
derogatory comments to me and in front of co-
workers about my "learning curve" to perform
my job duties.  On one occasion, McKeown
intentionally hit me with a black basket used
for patient's prescriptions and has
repeatedly threatened to discharge me.  On
the other hand, McKeown has provided a
similarly situated employee Lauren Kanda
(younger Asian-Japanese female, 20's)
adequate training and job assignments.

In September 2010, I complained to Respondent
about McKeown's discriminatory behavior and
my training.  During the investigation of my
complaint, Mckeown [sic] directed a female
Night Pharmacist (Rona Nuenes [sic]) to issue
me an unwarranted written warning.
Subsequently, I complained to Respondent
about retaliation.  I do not believe
Respondent took appropriate, corrective
action with respect to my complaints because
they were both dismissed.

Id.

The Kaneohe Long's store manager, Roy Matsuura, says he terminated You for having violated Long's PSE policy by selling Loratadine-D to a customer without using the MethCheck system. See Matsuura Decl. ¶ 4; You Depo. at 282, ECF No. 27-3.  McKeown had no involvement with the termination.  You's termination is not like or reasonably related to the allegations contained in the EEOC charge.  See B.K.B. v. Maui Police Department, 276 F.3d at 1100; see generally Albano, 912 F.2d at 385 (noting that a "constructive discharge" claim is not like or reasonably related to a "failure to promote" claim).  The same holds true for the claims concerning the MethCheck procedures, changing of time records, and failure to pay overtime.  Notably, You does not even attempt to relate those claims to any specific exhausted claim.

## 2.    Remaining Disparate Treatment Claims.

You asserts race, sex, and national origin discrimination in violation of Title VII (Count I), "regarded as disabled" discrimination in violation of the ADA (Count II), age discrimination in violation of the ADEA (Count III), and race, sex, age, ancestry, and disability discrimination in violation of section 378-2 of Hawaii Revised Statutes (Count V).  As noted above, these claims are all analyzed similarly.

At the hearing on the present motion, You agreed that the McDonnell Douglas burden-shifting framework should be applied

26

to these claims.  Under that framework, to prevail on a disparate treatment claim, You must establish a prima facie case of discrimination by showing that (1) she belongs to a protected class, (2) she was qualified for her position, (3) she was subject to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably.  See Davis v. Team Elec. Co., 520 F.3d 1080, 1089 (9th Cir. 2008).

> **a.   No Valid Sex or National Origin Discrimination Claim Is Asserted in Count I or Count V.**

You fails to demonstrate a prima facie case of sex discrimination because she fails to identify any similarly situated person outside of her protected class who was treated more favorably.  Because You fails to demonstrate that any male was treated more favorably than she was, the disparate treatment sex discrimination claims asserted in Counts I and V fail.  At most, You says that a floater pharmacist named Jeremy was catered to by McKeown.  See You Depo. at 299, ECF No. 27-2.  However, You fails to establish that Jeremy was similarly situated to her or treated better than she was with respect to the circumstances on which her claims are based.  And, as she concedes in her deposition, McKeown treated everyone badly, including men.  Id. at 298.

Similarly, the national origin claim asserted in Count I fails, as You does not allege that a person from a different country (or perceived as being from a different country) than You was treated more favorably. See, e.g., 29 C.F.R. ¶ 1601.1 (defining "national origin discrimination" "broadly as including, but not limited to, the denial of equal employment opportunity because of an individual's, or his or her ancestor's, place of origin; or because an individual has the physical, cultural or linguistic characteristics of a national origin group").

> **b.    No Valid Disability Discrimination Claim Is Asserted in Count II or Count V.**

You claims to have suffered an adverse employment action based on being perceived as having a disability. Count II asserts that Longs violated the ADA, which was enacted to eliminate barriers that prevent disabled individuals from fully participating in society. Kirkingburg v. Albertson's, Inc., 143 F.3d 1228, 1231 (9th Cir. 1998), rev'd on other grounds, 527 U.S. 555 (1999). Count V similarly asserts disability discrimination under Hawaii law. The court considers these claims together, as the analyses under the statutes are essentially the same. See Beaulieu v. Northrop Grumman Corp., 161 F. Supp. 2d 1135, 1142 n.1 (D. Haw. 2000) ("The Court will consider the claims under the ADA and HRS § 378-2 together, as the Hawaii Supreme Court looks to Federal Law to interpret state employment discrimination

law.") (citing <u>Bradley v. Harcourt, Brace & Co.</u>, 104 F.3d 267,

271 (9th Cir. 1996), and <u>Furukawa v. Honolulu Zoological Soc.</u>, 85

Haw. 7, 13, 936 P.2d 643 (1997)).

The ADA prohibits employers from discriminating

"against a qualified individual with a disability because of the

disability of such individual." <u>Bradley</u>, 104 F.3d at 271

(quoting 42 U.S.C. § 12112(a)).  The ADA defines "disability" as

"a physical or mental impairment that substantially limits one or

more major life activities of such individual."  42 U.S.C.

§ 12102(1)(A).  It also includes "being regarded as having such

an impairment."  42 U.S.C. § 12102(1)(C).  For disability

purposes, a limitation "must be severe or, in other words,

substantial when compared to the ability of the average person in

the general population." <u>McAlindin v. County of San Diego</u>, 192

F.3d 1226, 1235 (9th Cir. 1999) (quotation marks and citation

omitted); 29 C.F.R. § 1630.2(g) ("Being regarded as having such

an impairment . . . means that the individual has been subjected

to an action prohibited by the ADA as amended because of an

actual or perceived impairment that is not both 'transitory and

minor.'"); 29 C.F.R. § 1630.2(l)(1) (except when an impairment is

transitory and minor, "an individual is 'regarded as having such

an impairment' if the individual is subjected to a prohibited

action because of an actual or perceived physical or mental

impairment, whether or not that impairment substantially limits, or is perceived to substantially limit, a major life activity").

You says she was regarded as having a learning disability because she was told that she was not 100% and that she needed to write things down.  <u>See</u> You Depo. at 303, ECF No. 27-3.  You concedes that McKeown did not actually tell her that she had a "slow learning curve."  <u>Id.</u> at 206.  You submits no other evidence concerning the nature and extent of any perceived learning disability.  You thus fails to identify any qualifying perceived disability for purposes of her ADA claim.  That is, being told you are not 100% and that you need to write things down is insufficient to establish that Longs or McKeown regarded her as having a mental disability for purposes of the ADA.  You submits no evidence raising a question of fact regarding whether Longs or McKeown thought she had a mental impairment.

> **c.   You Has No Valid Disparate Treatment Claims With Respect to Race, Ancestry, or Age.**

You stated at the hearing that she was not relying on the supposed adverse employment actions articulated in paragraphs 16(j) and (k) of her declaration.  Those paragraphs stated:

> (j) Probably the reason that I was late for work so many times is that I was afraid to go there because of the hostile work environment caused by Defendant McKeown and others.

> (k) When Lauren Kanda was late, she was
> able to make up her time so that she was not
> underpaid but I was.

ECF No. 31-1.

Because You did not exhaust her administrative remedies with respect to the alleged adverse employment actions set forth in paragraphs 16(a) to (e) of her declaration, and because she withdrew the alleged adverse employment actions set forth in paragraphs 16(j) to (k) of her declaration, the only remaining alleged adverse employment actions You advances are contained in paragraphs 16(f) to (i) of You's declaration:

> (f) I was belittled and criticized by my
> employer's pharmacists but Lauren Kanda was
> not.
>
> (g) Defendant McKeown tried to make me
> quit by providing a hostile work environment
> or work place.
>
> (h) I was not fully trained but the
> employer and Mr. McKeown made it look like I
> was.
>
> (i) Mr. McKeown made me nervous at work
> but did not do that to Lauren Kanda.

ECF No. 31-1.

An "adverse employment action" is an action that is "materially adverse" to a reasonable employee or job applicant. Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006) (internal quotations omitted). The Ninth Circuit has explained that an "adverse employment action" is one that "materially affects the compensation, terms, conditions, or privileges of

employment." <u>Davis</u>, 520 F.3d at 1089.  An "adverse employment action exists" when the employer's actions are harmful to the point that they could dissuade a reasonable worker from making or supporting a charge of discrimination.  <u>White</u>, 548 U.S. at 68. Normally, "petty slights, minor annoyances, and simple lack of good manners" will not deter a reasonable worker from making a charge of discrimination, <u>id.</u>, while termination, dissemination of a negative employment reference, issuance of an undeserved performance review, and refusal to consider a plaintiff for a promotion may.  <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 928-29 (9th Cir. 2000).  <u>Accord</u> <u>Shoppe v. Gucci Am., Inc.</u>, 94 Haw. 368, 378, 14 P.3d 1049, 1059 (2000) (noting that an adverse employment action would include a discharge).

The Ninth Circuit defines "adverse employment actions" broadly, not limiting them to actions such as discharges, transfers, or demotions.  <u>See</u> <u>Lyons v. England</u>, 307 F.3d 1092, 1118 (9th Cir. 2002).  Instead, the Ninth Circuit says, adverse employment actions may include lateral transfers, unfavorable job references, and changes in work schedules, but not "every offensive utterance by co-workers, because offensive statements by co-workers do not reasonably deter employees from engaging in protected activity."  <u>Ray</u>, 217 F.3d at 1243.

In a Title VII case, the Ninth Circuit adopted the EEOC's guidelines for what an adverse employment action is,

ruling that an adverse employment action is any adverse treatment that "is reasonably likely to deter the charging party or others from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000); accord Elvig v. Calvin Presbyterian Church, 375 F.3d 951, 965 (9th Cir. 2004); see also Poland v. Chertoff, 494 F.3d 1174, 1180 (9th Cir. 2007) (applying same test to ADEA retaliation claim); Pardi v. Kaiser Found. Hosp., 389 F.3d 840, 850 (9th Cir. 2004) (applying same test to ADA retaliation claim).

To the extent You claims lack of training and a hostile work environment constituted adverse employment actions, see You Decl. ¶¶ 16(g) and (h), You appears to be referring to the same thing. In her deposition, You was asked for the basis of her alleged hostile work environment assertion. You responded that her age was used against her as an excuse not to teach her and to keep her from training. See You Depo. at 306. ECF No. 42-4.

With respect to training, You concedes that she received extensive training and that it was only on-job training that she did not complete. You says that she did not feel trained and that, although she eventually was trained in most things, Kanda was trained first and then asked to train You. You does not contend that training one person first was avoidable. Her complaint rather was that she was not selected as the first trainee. Nor does You contend that, when asked to train You,

Kanda failed to convey what Kanda had learned.  The record is insufficient to establish that the manner in which You was trained was "reasonably likely to deter the charging party or others from engaging in protected activity." Ray, 217 F.3d at 1242-43.  Given the state of the record, the lack of training asserted by You is not an adverse employment action.

That McKeown may have made You nervous, by itself, is also insufficient to constitute an adverse employment action. Being nervous is a subjective feeling, not an action taken by an employer.

This does not mean that knowingly causing another person to be uncomfortable can never be an adverse employment action.  But You fails to establish that McKeown made her uncomfortable out of some discriminatory animus on his part.

For example, while complaining that McKeown criticized her and that this is an adverse employment action, see You Decl. ¶ 16(f), ECF No. 31-1, You does not provide evidence that allows the court to draw even the inference that the criticism flowed from such an animus.  The criticism concerned You's attendance. See You Decl. ¶¶ 5, 13.  You does not clarify what was said about her attendance, but she may be referring to an attendance warning she received in May of 2011.  See Corrective Notification Form, ECF No. 27-30.  This warning told You that, if she violated the attendance policy (and earned a full point) before July 24, 2011,

she would be terminated.  Id.  Tardiness amounted to ½ point, and an absence to 1 point.  See You Depo. at 107, ECF No. 27-2.  Guy Yamashiro, a Longs assistant store manager, said that the written warning issued to You about her attendance erroneously assigned her a point, making You appear more at risk of termination than she was.  See Declaration of Guy Yamashiro ¶ 4, ECF No. 27-33; see also You Depo. at 308.

The court need not determine whether the written attendance warning (or what You referred to as "criticism") was "reasonably likely to deter the charging party or others from engaging in protected activity."  Ray, 217 F.3d at 1242-43.  This warning did not occur until May 13, 2011.  See ECF No. 27-30. You did not administratively exhaust this attendance claim when she submitted her charges to the EEOC and HCRC in late 2010.  See ECF No. 27-27.

Even if the court considers as "criticism" the write-ups You received on October 10, 2010, regarding placing a prescription on the wrong shelf and erroneously sending another prescription to the out-of-stock queue, see ECF Nos. 27-23 and 27-24, no discrimination is shown because You fails to demonstrate that a similarly situated employee with similar conduct was spared such a warning or comparable action.

Because You fails to specifically identify other "criticisms" that were "reasonably likely to deter [a] charging

party or others from engaging in protected activity," <u>Ray</u>, 217 F.3d at 1242-43, summary judgment is granted in favor of Defendants on the disparate impact claims based on race, ancestry, and age asserted in Counts I and V of the Verified Complaint.

### B.    There is No Viable Retaliation Claim.

Count IV of the Verified Complaint asserts retaliation in violation of 42 U.S.C. § 2000e-3.  For You to establish a prima facie case of such retaliation, she must show that: (1) she engaged in protected activity; (2) she was thereafter subjected to an adverse employment action; and (3) there is a causal link exists between the protected activity and the adverse action. See <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 891 (9th Cir. 1994); <u>Gonsalves v. Nissan Motor Co.</u>, 100 Haw. 149, 58 P.3d 1196, 1207 (2002).  The degree of proof required to make out a prima facie case is "minimal."  <u>See</u> <u>Cordovo v. State Farm Ins. Cos.</u>, 124 F.3d 1145, 1148 (9th Cir. 1997).  If a plaintiff establishes a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for its decision.  <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 802 (1973).  If the defendant articulates such a reason, the plaintiff bears the ultimate burden of demonstrating that the reason was merely a pretext for a discriminatory motive.  <u>Id.</u>

You claims to have suffered retaliation because she filed ethics complaints when she was "written up" for her attendance and when she was fired.  Id. at 307-08.  You did not administratively exhaust either of these claims.  Accordingly, You has no viable retaliation claim in Count IV.

### C.   There is No Viable Whistleblowing Claim.

Count VI asserts that Longs violated the Hawaii Whistleblower Protection Act, section 378-62 of Hawaii Revised Statutes, which states:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because:
>
> (1) The employee, or a person acting on behalf of the employee, reports or is about to report to the employer, or reports or is about to report to a public body, verbally or in writing, a violation or a suspected violation of:
>
>    (A) A law, rule, ordinance, or regulation, adopted pursuant to law of this State, a political subdivision of this State, or the United States; or
>
>    (B) A contract executed by the State, a political subdivision of the State, or the United States,
>
> unless the employee knows that the report is false; or
>
> (2) An employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action.

In her deposition, You indicated that her Whistleblower Protection Act claim is the same as the retaliation claim asserted in Count IV, just asserted under a different statute. See You Depo. at 312, ECF No. 27-3.

Longs argues that, to the extent the Whistleblower Protection Act claim complains of the same unexhausted wrongful termination retaliation claim, You should not be allowed to circumvent the exhaustion requirement and assert a Whistleblower Protection Act claim. Although that argument has some intuitive appeal, the legislature did not expressly require that administrative remedies be exhausted before the filing of a Whistleblower Protection Act claim in court. The court therefore questions the appropriateness of reading such a requirement into the act.

The court recognizes that, in Linville v. State of Hawaii, 874 F. Supp. 1095, 1104 n.4 (D. Haw. 1994), Judge Alan C. Kay noted that a section 378-62 claim had to be administratively exhausted. Judge Kay did not, however, contend that there was an express statutory exhaustion requirement.

Section 368-11(a) of Hawaii Revised Statutes gives the HCRC jurisdiction over claims of discrimination asserted under part I of chapter 378, which includes sections 378-1 to 378-10. Section 368-11(c) requires a complaint of discrimination under section 378-2 to be filed with the HCRC within 180 days of the

38

unlawful discriminatory practice or the last occurrence in a pattern of ongoing discrimination.  Because the Whistleblowers' Protection Act claim is based on section 378-62, located in part V of chapter 378, rather than section 378-2, no statutory language gives the HCRC jurisdiction over a section 378-62 claim, and it is unclear what statutory language could be read to make section 368-11(c)'s exhaustion requirements applicable.

Reading an exhaustion requirement into section 378-62 would mean placing before the HCRC claims far removed from those it has administrative expertise in.  For example, an employee fired for blowing the whistle on an employer's illegal dumping of hazardous waste would have a claim far outside the HCRC's normal area of concern.  The same could be said with respect to an employee who was suspended after reporting that taxable income was being concealed.  It is not clear why requiring exhaustion with the HCRC not only of claims relating to violations of part I of chapter 378, including section 378-2, but also of all whistleblower claims is appropriate.

The court remains troubled even if Longs is envisioning an exhaustion requirement only for whistleblower claims that implicate section 378-2(1) categories and therefore mirror retaliation claims falling under section 378-2(2), which require exhaustion.  In that event, Longs is not only asking the court to read an exhaustion requirement into section 378-62, Longs is then

asking the court to apply exceptions to that implied requirement. The court would be forced to examine every whistleblower claim to see if it fell under the implied exhaustion requirement or under an exception.

Requiring exhaustion with the HCRC of section 378-62 claims would also be inconsistent with the reasoning of Judge David Alan Ezra's decision in <u>Lesane v. Hawaiian Airlines</u>, 75 F. Supp. 2d 1113 (D. Haw. 1999).  In <u>Lesane</u>, the court held that Title VII's and chapter 378's administrative processes do not toll the limitation period for a section 378-62 claim.  <u>Id.</u> at 1125.  If the filing of charges with the EEOC or HCRC does not toll the limitations period for filing a whistleblower's claim under section 378-62, it makes no sense to say that a plaintiff must exhaust those administrative processes before filing a section 378-62 claim.  To do so would, in many cases, cause the two-year limitation period in section 378-63 to run.

Having detailed its concerns about requiring exhaustion for section 378-62 claims, this court is fortunately able to leave an actual decision on that issue for another day. Regardless of whether You did or did not need to exhaust her Whistleblower Protection Act claim, it fails on the merits.  This court has noted that the Whistleblower Protection Act does not explicitly define the elements of a claim under section 378-62. However, three elements can be extrapolated from its language:

> First, there must be a showing that the
> employee engaged in protected conduct as it
> is defined by the HWPA.  Second, the employer
> is required to take some adverse action
> against the employee.  Third, there must be a
> causal connection between the alleged
> retaliation and the whistleblowing.  In other
> words, to meet the causal connection
> requirement, the employer's challenged action
> must have been taken because the employee
> engaged in protected conduct.

Griffin v. JTSI, Inc., 654 F. Supp. 2d 1122, 1130-31 (D. Haw.

2008) (citations, quotation marks, and alterations omitted).

You fails to demonstrate any causal connection between

(a) any action she took that she says was protected (i.e.,

either her complaint about McKeown to the ethics line on

September 5, 2010, or her filing of administrative charges on

December 3, 2010), and (b) any conduct by her employer that she

might identify as retaliatory (i.e., either her attendance write

up in May 2011 or her termination on May 27, 2011).

With respect to the termination, there is no dispute

that You sold PSE without using the MethCheck system.  Nor is

there any dispute that Matsuura, the store manager, terminated

You or that Matsuura says he did so because You violated company

policy by failing to use the MethCheck system.  You does not show

that Matsuura even knew about the ethics line complaint.  Even if

he did, the more than eight months between the ethics line

complaint and You's termination make it difficult to infer

causation.

41

Causation may be inferred when an adverse employment action occurred "fairly soon after the employee's protected expression." Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1065 (9th Cir. 2002). "Causation sufficient to establish the . . . [causal link] element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987).

As this court has noted, a "temporal distance of several months makes a causal link more difficult to prove; a distance of five years severely undermines it." Stucky v. State of Haw., Dept. of Educ., 2007 WL 602105, *5 (D. Haw. Feb. 15, 2007); compare Nidds v. Schindler Elevator Corp., 113 F.3d 912, 919 (9th Cir. 1996) (four-month period between protected activity and layoff was sufficiently close to satisfy the "causal link" prong), and Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (three-month period sufficient to infer causation), with Manatt v. Bank of Am., NA, 339 F.3d 792, 802 (9th Cir. 2003) (no causal inference possible when nine months separated the protected activity from the adverse employment action).

Some years after the Ninth Circuit decided Nidds and Yartzoff, the Supreme Court observed in Clark County School

42

District v. Breeden, 532 U.S. 268, 273 (2001), that the requisite "temporal proximity must be 'very close.'"  Breeden cites with approval cases from the Seventh and Tenth Circuit Courts of Appeal holding that three- and four-month periods do not support an inference of causation.  Id.

More recently, the Ninth Circuit has cautioned courts against engaging in a "mechanical inquiry into the amount of time between the speech and alleged retaliatory action."  Anthoine v. N. Central Counties Consortium, 605 F.3d 740, 751 (9th Cir. 2010).  There is no "bright line" rule providing that any particular period is always too long or always short enough to support an inference.  See Coszalter v. City of Salem, 320 F.3d 968, 977-78 (9th Cir. 2003).  With respect to the alleged retaliation in the form of her termination, You simply fails to present any evidence raising a question of fact as to whether she was terminated in retaliation for her complaints.  Quite apart from the eight-month gap, You presents no evidence that the person who fired her even knew about her complaints.

Similarly, with respect to the attendance write up, not only did much time elapse between the write up and the ethics line complaints, You fails to demonstrate that the person who wrote her up for attendance (Miyashiro, according to You) even knew about those complaints.  See You Depo. at 308, ECF No. 27-3. Moreover, although Longs admits to having improperly assigned You

43

points for tardiness on August 25 and September 3, 2010, see
Declaration of Guy Yamashiro ¶ 4, ECF No. 27-33, both of those
mistakes preceded You's ethics line complaint of September 5,
2010.  The erroneous assignment of points therefore could not
have been in retaliation for any ethics line complaint.  As for
the attendance warning in May 2011, that occurred nearly six
months after You filed administrative charges and eight months
after her ethics line complaints.  These time gaps, coupled with
the other circumstances noted above, cut against inferring the
causal link necessary for You's Whistleblower Protection Act
claim to survive.

> ### D.   You Has No Viable Hostile Work Environment Claim Based on Age.

Count III of the Verified Complaint asserts a hostile
work environment in violation of the ADEA.  The Ninth Circuit has
recognized hostile work environment claims asserted under the
ADEA.  See Sisho-Nownejad v. Merced Comty. Coll. Dist., 934 F.2d
1104, 1109 (9th Cir. 1991), overruled on other grounds as stated
in Dominguez-Curry v. Nevada Transportation Dept., 424 F.3d 1027,
1041 (9th Cir. 2005).  To establish the existence of a hostile
work environment based on her age, You must demonstrate that
(1) she was subjected to verbal or physical conduct based on age,
(2) this conduct was unwelcome, and (3) this conduct was
sufficiently severe or pervasive to alter the conditions of her
employment and to create an abusive working environment.  See

Freitag v. Ayers, 468 F.3d 528, 539 (9th Cir. 2006); Hardage v. CBS Broadcasting, Inc., 427 F.3d 1177, 1187 (9th Cir. 2005).  To be actionable, the environment must be both objectively and subjectively offensive.  When determining whether an environment was sufficiently hostile or abusive, courts examine all of the circumstances, including the frequency of the discriminatory conduct, its severity, whether it was physically threatening or humiliating, and whether it unreasonably interfered with an employee's work performance.  See Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998).  Simple teasing, offhand comments, and isolated incidents (unless extremely serious) do not amount to discriminatory changes in the terms and conditions of employment.  Id. at 788.

In her deposition, You explained that she was asserting a hostile work environment claim because her age was used as an excuse not to teach or train her.  See You Depo. at 306, ECF No. 42-4.  You fails to present any evidence that age was indeed the reason she was allegedly not trained.  You only speculates that Kanda was better trained because Kanda was younger.  Moreover, given the extent of the training that You did receive, the record does not suggest discriminatory conduct that was so severe or pervasive that it altered the conditions of You's employment and created an abusive working environment.  Summary judgment is

45

granted in favor of Defendants on the age-based hostile work environment claim.

>    **E.   You Has No Viable Claim for Intentional Infliction of Emotional Distress.**

Count VII of the Verified Complaint asserts that McKeown intentionally inflicted emotional distress on You. This claim is not being asserted against Longs.

Under Hawaii law, an intentional infliction of emotional distress ("IIED") claim requires a plaintiff to establish that: (1) the act that caused the harm was intentional or reckless; (2) the act was outrageous; and (3) the act caused extreme emotional distress to another. <u>Young v. Allstate Ins. Co.</u>, 119 Haw. 403, 429, 198 P.3d 666, 692 (2008). An IIED claim "requires conduct exceeding all bounds usually tolerated by decent society and which is of a nature especially calculated to cause, and does cause, mental distress of a very serious kind." <u>Hac v. Univ. of Haw.</u>, 102 Haw. 92, 106, 73 P.3d 46, 60 (2003) (citations omitted). An "outrageous" act is one "without just cause or excuse and beyond all bounds of decency" such that upon hearing the facts of a case "average members of our community might indeed exclaim, 'Outrageous.'" <u>See Young</u>, 119 Haw. at 429-30, 198 P.3d at 692-93. "The question whether the actions of the alleged tortfeasor are unreasonable or outrageous is for the court in the first instance, although where reasonable people may

differ on that question it should be left to the jury."   Id. at 429, 198 P.3d at 692.

McKeown initially argues that he is entitled to summary judgment based on worker's compensation exclusivity, as set forth in section 386-5 of Hawaii Revised Statutes.  That argument is unpersuasive.

> Section 386-5 provides:
>
> The rights and remedies herein granted to an employee or the employee's dependents on account of a work injury suffered by the employee shall exclude all other liability of the employer to the employee, the employee's legal representative, spouse, dependents, next of kin, or anyone else entitled to recover damages from the employer, at common law or otherwise, on account of the injury, except for sexual harassment or sexual assault and infliction of emotional distress or invasion of privacy related thereto, in which case a civil action may also be brought.

As noted by McKeown, the Intermediate Court of Appeals for the State of Hawaii ("ICA"), in Yang v. Abercrombie and Fitch Stores, 128 Haw. 173, 284 P.3d 946 (2012), has recently examined worker's compensation exclusivity with respect to claims asserted against an employer for injuries allegedly caused by the willful acts of other employees acting in the course and scope of their employment.  In that case, the ICA determined that the claims against the employer were barred by the exclusivity provision. See id. at 183, 284 P.3d at 956.

However, McKeown has failed to establish that he is You's <u>employer</u> (as opposed to her supervisor) for purposes of section 386-5.  The Hawaii Supreme Court has recognized that a supervisor may have "co-employee" (not employer) liability for "wilful and wanton conduct" under section 386-8 of Hawaii Revised Statutes.  See Iddings v. Mee-Lee, 82 Haw. 1, 21, 919 P.2d 263, 283 (1996).  In relevant part, section 386-8 of Hawaii Revised Statutes provides that "[a]nother employee of the same employer shall not be relieved of his [or her] liability as a third party, if the personal injury is caused by his [or her] wilful and wanton misconduct."  McKeown's reliance on Yang is therefore unpersuasive.

McKeown makes another argument that fares better.  He moves for summary judgment on the ground that his alleged actions were not sufficiently "outrageous" to support an IIED claim. You's Opposition does not respond to this argument.  Even if the court considers every act by McKeown that You complains of, those acts collectively are insufficient as a matter of law to amount to IIED.

McKeown allegedly favored Kanda over You.  He allegedly trained Kanda first and then asked Kanda to train You.  He also allegedly allowed Kanda to work overtime while not assigning overtime shifts to You.  While these alleged actions may well have distressed You, the court has not been pointed to any

evidence indicating that McKeown's conduct was outrageous.   If, for example, McKeown considered Kanda more capable or quicker than You, it was not outrageous for him to select Kanda to be trained first or to be assigned additional work.   The court is not, of course, finding that McKeown did indeed favor Kanda on competence grounds.   Instead, the court is noting that You does not meet her burden of showing some basis on which a jury could find the training or overtime actions outrageous, as opposed to reasonable.

You also complains that McKeown allowed Kanda to make up time when she was late, while not allowing You to do the same. You provides no detail indicating that she and Kanda were late for the same reasons or with the same frequency.   The total absence of context precludes a finding of outrageousness on this issue.   You has the burden on the present motion of showing some triable issue.   She does not meet that burden with respect to making up time.

McKeown supposedly "stressed out" You when he asked her how many times she had dispensed a particular drug.   He says he asked because he wanted to make sure she knew the generic names of common drugs that the pharmacy dispensed.   He then allegedly told her in a subsequent meeting upstairs that she was not qualified to work in the pharmacy and that she should "self-identify and check."   When You complained about getting

49

insufficient training, McKeown allegedly told her, "Don't worry about it.  I decide."  You says McKeown only showed her things once and told her that she should write things down and that she was not 100% yet.  Divorced from the discrimination claims, which the court is not allowing to proceed, these alleged comments, while unpleasant to hear, are in the nature of a supervisor's evaluation.  A supervisor is not outrageous just because his evaluation is unfavorable.

Finally, You says McKeown reprimanded her for saying "yea" instead of "yes," and once pushed a pharmacy basket toward her when she did not know what to do with it, causing the basket to make contact with her.  She does not allege that she was physically injured  These acts are not beyond all decency and would not make an average member of society exclaim, "Outrageous!"  See Young, 119 Haw. at 429-30, 198 P.3d at 692-93.

**V.        CONCLUSION.**

The court grants Defendants' motion for summary judgment.  The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 27, 2013.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

You v. Longs Drug Stores California, LLC, Civ. No. 11-00530 SOM/RLP; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT